UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| M.A.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-02229-NCC |
| | ) | |
| MICHELLE MASON, | ) | |
| in her individual capacity only, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff M.A.B.'s Motion for Partial Summary Judgment (Doc. 34) and Defendant Michelle Mason's Cross-Motion for Summary Judgment (Doc. 43). The Motions are fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 7). For the following reasons, Plaintiff's Motion will be **DENIED** and Defendant's Motion will be **DENIED**.

**I. Background**

On July 5, 2017, Plaintiff M.A.B. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 and Missouri state law against Defendants the City of Maryland Heights, Missouri ("Maryland Heights"), Michele Mason ("Mason"), and Gregory Johnston ("Johnston") (collectively "Defendants") in St. Louis County Circuit Court (Doc. 2). On August 9, 2017, Defendants removed the case to the United States District Court for the Eastern District of Missouri (Doc. 1). On October 27, 2017, the Court granted Defendants' Joint Motion for More Definite Statement and Dismissal, in part, and directed Plaintiff to file an Amended Complaint (Doc. 15). Plaintiff filed her Amended Complaint on November 7, 2017 (Doc. 16). Plaintiff

sued Mason, a Maryland Heights police officer, and Johnston, also a Maryland Heights police officer, (collectively the "Officer Defendants") in their individual capacities only (*Id.*). Plaintiff makes claims against the Officer Defendants pursuant to section 1983 for violations of Plaintiff's Substantive Due Process (Counts I, III) and for an Unreasonable Search (Counts II, IV), as well as violations of Missouri's Strip Search Law, Missouri Revised Statute § 544.195 (Counts VI, VII) (*Id.*). Plaintiff also raises a section 1983 failure to train claim against Defendant Maryland Heights (Count V) (*Id.*). On August 29, 2019, on Plaintiff's consent Motion, the Court dismissed, with prejudice, Defendant Maryland Heights and Defendant Officer Johnston and Counts III, IV, V, and VII (Doc. 30). Therefore, remaining before the Court are Counts I, II, and VI against Defendant Officer Mason in her individual capacity. The undisputed facts are, relevant to the current motions, as follows.[1]

On April 26, 2016, at approximately 10:22 a.m. Plaintiff, a 32-year old female, was driving in her own vehicle southbound along North Lindbergh Boulevard north of Adie Road in the City of Maryland Heights, Missouri (Plaintiff's Statement of Undisputed Material Facts (hereinafter "PSOF"), Doc. 36, ¶1).[2] Officer Johnston pulled over Plaintiff after he "clocked" Plaintiff going 55 mph, a speed in excess of the posted limit of 40 mph (*Id.*). Plaintiff exited Lindbergh at the Dorsett Road exit and stopped her car on the Dorsett Road bridge overpass over

---

[1] The facts are taken from Plaintiff's Statement of Undisputed Material Facts (Doc. 36) and associated exhibits (Docs. 36-2 to 36-11); Defendant's Response to Plaintiff's Statement of Undisputed Material Facts (Doc. 45 at 1-15); Defendant's Additional Undisputed Facts (Doc. 45 at 16-17); Plaintiff's Response to Defendant's Additional Facts and Plaintiff's Additional Facts (Doc. 49); and Defendant's Reply in Support of Defendant's Additional Facts and Response to Plaintiff's Additional Facts (Doc. 53).

[2] To the extent either party raises objections or otherwise submits responses to the statements of facts outside the scope of Local Rule 4.01(E), the Court will not consider them.

Lindbergh Boulevard (PSOF ¶2; Defendant's Additional Facts, Doc. 45 at 16-17, ¶6). The overpass had a cement barrier on the passenger side of the vehicle (Defendant's Additional Facts ¶7).

Officer Johnston ran Plaintiff's license plate and driver's license (PSOF ¶¶ 3-4). Officer Johnston had no information that Plaintiff had committed a felony (PSOF ¶8). Officer Johnston asked Plaintiff to exit her car (PSOF ¶12). Plaintiff exited her car (PSOF ¶13). Plaintiff consented to a search of her car (PSOF ¶14). At some point during the stop, Officer Johnston called for a female officer to come to the scene (PSOF ¶16). Defendant Officer Mason was on duty at the time and came to the scene (PSOF ¶¶17-18). Officer Johnston told Defendant Officer Mason that Plaintiff was nervous, had been moving around in her car, and "something about a warrant" (PSOF ¶¶19, 24, 25). Whether Officer Johnston told Defendant Officer Mason that the warrant was connected to Plaintiff is a matter of dispute, as neither Officer Johnston nor Defendant Officer Mason recalls this information (PSOF ¶¶19, 25). Defendant Officer Mason approached Plaintiff as she was standing in front of Officer Johnston's car (PSOF ¶27). Plaintiff was not handcuffed (PSOF ¶28). Defendant Officer Mason was not advised that Plaintiff was under arrest (PSOF ¶29). Defendant Officer Mason, wearing gloves, patted down Plaintiff (PSOF ¶32). Plaintiff concedes for the purposes of these motions only, that Plaintiff consented to this portion of the search, which Plaintiff identifies as the pat-down search (PSOF ¶31).

Defendant Officer Mason then walked Plaintiff to her patrol car (PSOF ¶33). Defendant Officer Mason had Plaintiff sit in the rear passenger seat of the patrol car, with the door open and her feet outside the car, facing the cement barrier of the overpass (PSOF ¶34; Defendant's Additional Facts ¶¶7, 8). Plaintiff was wearing a cotton stretchy tank top (PSOF ¶35).

Defendant Officer Mason "patted the outside of [Plaintiff's] bra and [] shook her bra" (PSOF ¶36). "Shaking the bra" is defined as grabbing the middle of the bra, the wire or other material, and shaking it (Defendant's Additional Facts ¶3; Plaintiff's Response to Defendant's Additional Facts, Doc. 49, ¶3). Defendant Officer Mason's standard practice in performing a pat down includes a pat and shake of the bra (Defendant's Additional Facts ¶1). While the parties dispute whether Defendant Officer Mason reached under Plaintiff's shirt to touch Plaintiff's bra, Defendant Officer Mason concedes that she touched Plaintiff's breasts through her bra (PSOF ¶¶38, 40; Response to PSOF ¶¶38, 40; Defendant's Additional Facts ¶4; Plaintiff's Response to Defendant's Additional Facts ¶4). The parties also dispute the exact nature of Defendant Officer Mason's contact with Plaintiff's bra (PSOF ¶40; Response to PSOF ¶40). Specifically, Plaintiff alleges that Defendant Officer Mason asked Plaintiff to unhook her bra, lifted Plaintiff's shirt a little bit, and used her hands to go from the sides of her breasts, under her breasts, to inside, around, and behind her breasts (Doc. 36-3 at 13 (Plaintiff's deposition)).

The remainder of Defendant Officer Mason's search of Plaintiff remains in dispute and is not addressed, by agreement of the parties, in the current motions for summary judgment (*See* Doc. 34 at 2). Defendant Officer Mason's search of Plaintiff did not uncover any weapons or contraband (PSOF ¶43). Defendant Officer Mason did not seek permission from a supervisor to conduct a strip search (PSOF ¶44; Response to PSOF ¶44). Defendant Officer Mason did not write a report about her search of Plaintiff (PSOF ¶45; Response to PSOF ¶45).

A few weeks prior to the encounter, Defendant Officer Mason received a score of two for self-initiated activity on an evaluation, indicating a need for some improvement in the area (Plaintiff's Additional Facts ¶¶3-4). Defendant Officer Mason subsequently began tracking her

female searches (PSOF ¶22; Defendant's Response ¶22).

On September 18, 2018, Plaintiff filed a Motion for Partial Summary Judgment, Liability, Under Missouri Strip Search Law and § 1983 Unreasonable Search, on Issue of Shaking Bra and Touching of Breasts Through Bra (Doc. 34). Plaintiff argues that when Officer Mason shook Plaintiff's bra, Officer Mason as a matter of law violated (1) Missouri Strip Search Law and (2) Plaintiff's clearly established Fourth Amendment constitutional right to be free of an unreasonable search (*Id.*). Plaintiff requests the Court enter partial summary judgment in Plaintiff's favor on liability as to the shaking of Plaintiff's bra and the touching of Plaintiff's breasts through the bra on Counts II and VI (*Id.*).

Defendant Officer Mason filed a Cross Motion for Summary Judgment on October 25, 2018 (Doc. 43). In her Motion, Defendant Officer Mason asserts that Plaintiff's claims under the Missouri Strip Search Statute fail because Defendant Officer Mason's actions in shaking the Plaintiff's bra fail under the definition of the Missouri Strip Search Statute and she had probable cause, or arguable probable cause, to perform the search (*Id.*). Defendant Officer Mason further asserts that Plaintiff's claims under the Missouri Strip Search Statute are barred by official immunity (*Id.*). Defendant Officer Mason also argues that Plaintiff's constitutional claims fail because Defendant's actions were reasonable under the circumstances and, therefore, Plaintiff's Fourth Amendment rights were not violated during the search (*Id.*). Defendant Officer Mason additionally asserts that Plaintiff's claims are barred by qualified immunity as a reasonable officer in Defendant's position could conclude, based on the law established at the time of the incident, that the search was lawful (*Id.*).

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once the moving party demonstrates that there is no genuine issue of material fact, the nonmovant must do more than show there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing a genuine factual dispute that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248). In ruling on a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the non-moving party. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The evidence is not weighed and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. Analysis

### A. Count VI: Missouri Strip Search Law Claim

Under Missouri law:

No person arrested or detained for a traffic offense or an offense which does not constitute a felony may be subject to a strip search or a body cavity search by any law

6

enforcement officer or employee unless there is probable cause to believe that such person is concealing a weapon, evidence of the commission of a crime or contraband.

Mo. Rev. Stat. § 544.193.2. A strip search is defined by statute as follows:

"Strip search" means the removal or rearrangement of some or all of the clothing of a person so as to permit an inspection of the genitals, buttocks, anus, breasts or undergarments of such person, including but not limited to inspections conducted visually, manually or by means of any physical instrument.

Mo. Rev. Stat. 544.193.1(2). Further:

All strip searches and body cavity searches conducted by law enforcement officers or employees in this state shall be performed by persons of the same sex as the person being searched, and shall be conducted on premises where the search cannot be observed by any person other than the persons physically conducting the search.

Mo. Rev. Stat. 544.193.3. A law enforcement officer conducting a strip search shall:

(1) Obtain the written permission of the person in command of the law enforcement agency in which the strip search or body cavity search is to be conducted authorizing the strip search or body cavity search; and

(2) Prepare a report regarding the strip search or body cavity search. The report shall include:
    (a) The written permission required in subdivision (1) above;
    (b) The name of the person searched;
    (c) The name of the persons conducting the search;
    (d) The time, date and place of the search.
A copy of the report shall be furnished to the person who was searched.

Mo. Rev. Stat. 544.193.5. Missouri Revised Statute section 544.195.2 provides that a person who suffers actual damages as a result of a violation of section 544.193 may initiate a private civil action to recover damages. *State v. Esquivel*, 987 S.W.2d 481, 483 (Mo. Ct. App. 1999) (citing Mo. Rev. Stat. 544.195.2).

The threshold question is whether, in the light most favorable to Defendant, a strip search occurred under the strip search law when Defendant Officer Mason shook Plaintiff's bra and touched Plaintiff's breasts through her bra. To meet the definition of a strip search in this case,

7

the search must both involve the (1) removal or rearrangement of clothing and (2) "so as to permit" the visual or manual inspection of the breast or undergarments. Mo. Rev. Stat. 544.193.1(2). "Missouri courts have interpreted this language [("so as to permit")] to require removal or rearrangement of clothing 'for the purpose of conducting' an inspection of the arrestee's genitals, buttocks, anus, breasts, or undergarments." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 575 (8th Cir. 2009) (quoting *Esquivel*, 987 S.W.2d at 482. Defendant Officer Mason apparently concedes that her shaking of Plaintiff's bra amounts to "rearrangement" under the statutory scheme (Doc. 44 at 5-6). However, Defendant Officer Mason asserts that the intent to inspect the Plaintiff's breasts or undergarments is absent here as the shaking of Plaintiff's bra was standard practice pursuant to Defendant Officer Mason's pat-down search procedures (Doc. 44 at 6).

Viewing the facts in the light most favorable to Defendant Officer Mason, the Court finds that Defendant Officer Mason had the requisite intent required to establish that a strip search was conducted under the statutory scheme. The parties direct the Court to the cases of *Schmidt* v. *City of Bella Villa*, 557 F.3d 564, 575 (8th Cir. 2009) and *State v. Esquivel*, 987 S.W.2d 481, 482 (Mo. Ct. App. 1999) in support of their divergent arguments regarding this issue. In *Schmidt*, the Eighth Circuit Court of Appeals found that a police chief's photographing of a suspect's tattoo did not amount to a strip search under Missouri Strip Search Law because his intent in asking a suspect to unbutton her jeans and fold them inwards was to inspect suspect's tattoo, not to inspect her underwear. 557 F.3d at 575. In *Esquivel*, the Missouri Court of Appeals found an officer's pat-down search and removal of an object from the waistband of suspect's pants not to be a strip search. 987 S.W.2d at 482. In so doing, the court determined that the officer lacked

8

the requisite intent because the officer did not remove or rearrange suspect's clothing "'so as to permit'—that is for the purpose of conducting—a visual or manual inspection of [suspect's] genitals, buttocks, anus, breasts or undergarments." *Id.* Instead, the officer rearranged suspect's clothing to remove the already-discovered contraband. *Id.*

Upon a thorough review of these cases, the Court finds that they support the conclusion that Defendant Officer Mason intended to conduct a manual inspection of Plaintiff's breasts and bra. Here, unlike in *Schmidt*, Defendant Officer Mason offers no secondary reason, like the identification of an individual, for her inspection of Plaintiff's bra and breasts. Further, unlike in *Esquivel*, Defendant Officer Mason did not initiate the portion of the search at issue in the current motions in an attempt to *recover* contraband but, instead, the clear, and sole, intent of shaking of Plaintiff's bra and touching Plaintiff's breasts, even in the light most favorable to Defendant Officer Mason, was to search Plaintiff in an attempt to *uncover* contraband.

Further, contrary to Defendant Officer Mason's assertion, her actions cannot merely be categorized as a pat-down search. As noted by Plaintiff, a pat-down search is conducted outside the clothing and that is not the case here. *See United States v. Aquino*, 674 F.3d 918, 925 (8th Cir. 2012). Defendant Officer Mason concedes that she touched Plaintiff's breasts "[t]hrough her bra" (Doc. 36-6 at 11). While Defendant Officer Mason argues that this statement, her account of the events, does not support Plaintiff's assertion that the search occurred under Plaintiff's shirt, it also does not controvert, directly or indirectly, Plaintiff's evidence, including Plaintiff's own deposition testimony, that the search occurred under Plaintiff's shirt (Doc. 36-3 at 13). Therefore, even in the light most favorable to Defendant, Defendant Officer Mason has failed to set forth specific facts showing that there is a genuine issue of fact regarding whether

9

Defendant Officer Mason went under Plaintiff's shirt in her search of Plaintiff. *Herring,* 207 F.3d at 1028. Also, although Defendant Officer Mason indicates that it is a part of her standard practice in performing a pat down to include a pat and shake of the bra, this does not appear to be the norm. *See Whittington v. Isgrig,* No. 2:13 CV 16 DDN, 2015 WL 2412160, at *2 (E.D. Mo. May 20, 2015) (detailing the proper pat-down procedure in the Missouri Department of Corrections which does not include a pat or shake of the bra); *D.H. v. Doe I*, No. 4:14 CV 1882 RWS, 2016 WL 4720456, at *1 (E.D. Mo. Sept. 9, 2016) (indicating that once an individual is arrested in St. Louis City, that person is subject to a pat-down search in the street and a full custodial search at the police station; during the full custodial search, female arrestees are asked to extend their bra and shake it). Accordingly, the Court finds that there is no genuine issue of material fact that Defendant Officer Mason conducted a strip search under Missouri law when Defendant Officer Mason shook Plaintiff's bra and touched Plaintiff's breasts through her bra and under her shirt.

The Court further finds no genuine issue of material fact that Defendant Officer Mason violated Missouri Strip Search Law. Defendant Officer Mason concedes that she did not obtain written permission to conduct the strip search or write a report as required under the statutory scheme ((PSOF ¶¶44, 45; Response to PSOF ¶¶44, 45). These issues alone are sufficient to find that Missouri Strip Search Law was violated. However, further, having found the shaking of Plaintiff's bra and the touching of Plaintiff's breast through her bra, under Plaintiff's shirt, to be a strip search, the location of the search also violates the privacy restrictions imposed under Missouri Law. In the back of a police vehicle, on the side of the road, even facing a cement barrier on an overpass, does not meet the definition of "premises where the search cannot be

10

observed by any person other than the persons physically conducting the search." Mo. Rev. Stat. 544.193.3. *Cf. Smalley v. Stevens*, No. 4:12CV00171 ERW, 2013 WL 53850, at *2 (E.D. Mo. Jan. 3, 2013) (finding "[t]he searches of plaintiff at the police station were not conducted in violation of § 544.193"). Finally, the Court finds there to be a genuine issue of material fact as to whether Defendant Officer Mason had sufficient probable cause to conduct a strip search. While Plaintiff concedes that Officer Johnston had probable cause to stop Plaintiff on the basis of her speeding and Officer Johnston told Defendant Officer Mason that Plaintiff was nervous, had been moving around in her car, and "something about a warrant," the warrant does not seem connected to Plaintiff and nothing appears to have been uncovered during the initial pat-down search to warrant a strip search, much less one urgently performed at the scene. However, the Court is not inclined at this time to find Defendant Officer Mason did not have probable cause to search Plaintiff, as the nature and extent of the search is relevant to the analysis and a portion of the search is not currently before the Court.

Regardless, the Court is unable to grant summary judgment in favor of Plaintiff as Defendant Officer Mason's actions may well fall under the Official Immunity Doctrine. "Under the doctrine of official immunity, public officials acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but may be held liable for torts committed when acting in a ministerial capacity." *Shell v. Ebker*, No. 4:04-CV-1817 CAS, 2006 WL 1026982, at *10 (E.D. Mo. Apr. 14, 2006) (citing *Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo. 1985) (en banc)). Whether an official's acts were discretionary "depends on the degree of reason and judgment required' to perform the act." *Davis v. Lambert,* 193 S.W.3d 760, 763 (Mo. 2006) (citing *Kanagawa,* 685 S.W.2d at 836). A discretionary act

requires "the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Bachmann v. Welby*, 860 S.W.2d 31, 33 (Mo. Ct. App. 1993) (quoting *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. 1984). By contrast, a ministerial act is a routine, clerical act that is prescribed "without regard to the officer's own judgment or opinion." *Id.* "Whether an act is discretionary or ministerial is determined by the facts of each particular case." *Id.* (citing *Kanagawa,* 685 S.W.2d at 836). Whether or not an act is discretionary or ministerial is based upon "(1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Southers* at 610.

As a preliminary matter, Plaintiff asserts that Defendant Officer Mason is not entitled to official immunity as the Missouri Strip Search Law expressly removes Defendant Officer Mason's conduct from the protections of official immunity. However, while public employees' conduct contrary to an applicable statute may constitute evidence that their conduct was negligent, the violation does not necessary remove the conduct from the protections afforded official immunity absent the express intent of the Missouri legislature to modify or supersede the common law doctrine. *Southers v. City of Farmington*, 263 S.W.3d 603, 617 (Mo. 2008) ("Public employees' conduct that is contrary to applicable statutes or policies can constitute evidence that their conduct was negligent, but that conduct does not remove their negligence from the protections of the official immunity or public duty doctrines where the provisions at issue indicate no intent to modify or supersede these common law immunity protections."); *State ex. rel. Golden v. Crawford*, 165 S.W.3d 147 (Mo. 2005) (statute supersedes common law

12

immunities and affords qualified statutory immunity to 911 operator).

Here, the statutory scheme does not expressly indicate that a violation of the strip search statute shall be removed from the protections of official immunity. The full statutory section reads:

> 1. Nothing in sections 544.193 to 544.197 [which includes the strip search provisions] shall be construed as limiting any common law or statutory rights of any person regarding any action for damages or injunctive relief, or as precluding the prosecution under another provision of law of any law enforcement official or employee who has violated sections 544.193 to 544.197.
>
> 2. Any person who suffers actual damage as a result of the violation of sections 544.193 to 544.197 may bring a private civil action in the circuit court of any county in which any defendant resides or in which the search complained of occurred or in which any plaintiff resides and a defendant may be found, to recover actual damages. In addition to actual damages, the court may, in its discretion, also award punitive damages and such equitable relief as it deems necessary and proper. The court may award reasonable attorney's fees to the prevailing party, which attorney's fees shall be based on the amount of time reasonably expended by an attorney on behalf of the prevailing party.

Mo. Rev. Stat. § 544.195. In this case, the statute provides for both a private civil action in the case of a statutory violation and also indicates the intent of the legislature to safeguard common law protections. Plaintiff asserts that if police officers are entitled to official immunity for strip searches there would be no remedy for illegal strip searches at all as the first provision would render the second provision meaningless (Doc. 48 at 10-11). However, conversely, if the Court were to find the second provision controlling, the first would be rendered meaningless as no immunities to violations of the strip search statute would be available. Furthermore, as addressed in more detail below, there are cases in which official immunity would not apply to a violation of the strip search law such that a civil action under the second provision would be the proper vehicle for seeking redress. Therefore, Defendant Officer Mason's actions cannot be

13

automatically removed from the protections of official immunity based on the statutory language.

The threshold question is whether Defendant Officer Mason's acts are properly categorized as discretionary or ministerial acts. Plaintiff asserts that Defendant Officer Mason's duties encompassed enforcing the state's laws and that she did not need to use professional judgment to follow the law (Doc. 35 at 10). However, as noted by Defendant Officer Mason, Defendant exercised professional discretion in determining the "how, when, where and to what extent" the search was to be performed (Doc. 44 at 10). *See Schmidt,* 557 F.3d at 575 (rearrangement of clothing to photograph tattoo is a discretionary act). Therefore, Defendant Officer Mason's actions of shaking Plaintiff's bra and touching Plaintiff's breasts through her bra are properly categorized as discretionary acts.

Nevertheless, "[o]fficial immunity does not apply . . . to discretionary acts done in bad faith or with malice." *Shell*, 2006 WL 1026982, at *11 (citing *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986)). *See also Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009) ("When an official is exercising such discretionary functions, official immunity applies unless a willful or malicious wrong is committed.") (internal citation omitted). "Bad faith . . . embraces more than bad judgment or negligence." *Twiehaus*, 706 S.W.2d at 447 (quoted case omitted). "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* (quoted case omitted). "Malice, in the official immunity context, means intentionally committing an act that the official has reason to believe is legally prohibited." *Terbrock v. Berry*, No. 2:09CV0013 JCH, 2010 WL 3075712, at *9 (E.D. Mo. Aug. 3, 2010) (quoted case

omitted). A defendant acts with malice when she wantonly does that which a person of reasonable intelligence would know to be contrary to her duty and which she intends to be prejudicial or injurious to another. *Twiehaus*, 706 S.W.2d at 447. "[M]alice is defined to include 'reckless indifference to the rights of others.'" *Estate of Snyder v. Julian*, 789 F.3d 883, 887 (8th Cir. 2015) (quoting *Twiehaus*, 706 S.W.2d at 446-47).

Plaintiff argues that Defendant Officer Mason acted with bad faith or malice because the search was not done for a proper law enforcement purpose but was instead done to impress Defendant Officer Mason's bosses with her diligence as an officer. At this stage, even in the light most favorable to Plaintiff, the Court does not find this speculation alone sufficient to rise to the level of a genuine issue of fact regarding Defendant's alleged bad faith or malice. *Schmidt*, 557 F.3d at 575 ("Although we view the evidence in the light most favorable to the nonmoving party, such speculation does not raise a genuine issue of fact regarding [Defendant's] alleged bad faith or malice."). However, the Court finds a genuine issue of fact regarding whether Defendant Officer Mason's behavior amounts to reckless indifference to Plaintiff's rights. Defendant Officer Mason shook Plaintiff's bra and touched Plaintiff's breasts through her bra under her shirt in clear violation of the Missouri strip search statutory scheme. While this alone may not indicate reckless indifference to Plaintiff's rights, the remainder of the search, potentially involving a search of Plaintiff's vaginal and anal areas, may amount to reckless indifference and, as the parties concede, there is a genuine issue of material fact regarding this portion of the search. *See* Doc. 44 at 2-3 ("There are undoubtedly two conflicting versions of the facts in this case . . . . Plaintiff then alleges that Defendant performed a cavity search of her genitals (. . . this search is heavily contested and not subject to either party's summary judgment

15

motion)."). *Miller v. Albright*, No. 4:07-CV-1086 CAS, 2009 WL 4573295, at *8 (E.D. Mo. Dec. 3, 2009) (finding official immunity to be an issue for the jury when plaintiff's allegations "encompass[ed] a conscious abuse of official duty and power which could fall within the scope of malice or bad faith"). *See also Moore v. City of Ferguson, Missouri*, 213 F. Supp. 3d 1138, 1149 (E.D. Mo. 2016) (denying an officer official immunity and finding "though it is a close call, the evidence could support a finding that because [plaintiff] was unarmed and on the ground and so little time passed between Tasings, defendant [] acted with reckless indifference to [plaintiff's] rights."); *Barnett v. Wasem*, No. 4:12CV373 CDP, 2013 WL 5550593, at *4 (E.D. Mo. Sept. 4, 2013) (finding a genuine issue whether a detective acted in bad faith or with malice and thereby precluding him from claiming official immunity where plaintiffs cited evidence that the detective shot an unarmed man five times and then fired a sixth shot into his back as he lay on the ground). The Court, however, shall not address issues not before it nor afford Defendant Officer Mason official immunity on only a portion of the disputed search at issue.

Accordingly, the Court will deny the parties' cross motions for summary judgment on Plaintiff's Count VI, violation of Missouri Strip Search Law.

**B. Count II: Section 1983 Unreasonable Search Claim**

Strip searches are governed by the Fourth Amendment and are actionable under section 1983. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). *See also D.H.*, 2016 WL 4720456, at *4 ("Illegal strip searches by law enforcement officers are rightly the target of lawsuits to stop such practices."). In determining whether a strip search is unreasonable, a court must balance the need for the particular search against the invasion of personal rights that the search entailed. *See Franklin v. Lockhart*, 883 F.2d 654, 656 (8th Cir. 1989). Factors that a court must consider

include: "(1) the justification for initiating the search, (2) the scope of the particular intrusion, (3) the place in which the search is conducted, and (4) the manner in which it is conducted." *Schmidt*, 557 F.3d at 572 (citing *Wolfish*, 441 U.S. at 559). Courts applying the *Wolfish* balancing test "have recognized that strip and visual body cavity searches impinge seriously upon the values that the Fourth Amendment was meant to protect." *Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir. 1997) ("[A] strip search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual.").

The Court finds genuine issues of fact remain regarding the scope of the strip search and the manner in which it was performed. Viewing the evidence in the light most favorable to Defendant, upon her arrival to the scene, Officer Johnston told Defendant Officer Mason that Plaintiff was nervous, had been moving around in her car, and "something about a warrant" (PSOF ¶¶19, 24, 25). However, whether Officer Johnston told Defendant Officer Mason that the warrant was connected to Plaintiff is a matter of dispute; Defendant Officer Mason testified at her deposition that she did not recall (PSOF ¶¶19, 25). Defendant Officer Mason then conducted a search of Plaintiff, walked Plaintiff to her patrol car, had Plaintiff sit in the rear passenger seat of the patrol car, with the door open and her feet outside the car, facing the cement barrier of the overpass, and "patted the outside of [Plaintiff's] bra and [] shook her bra" (PSOF ¶¶33, 34, 36; Defendant's Additional Facts ¶¶7, 8). As previously indicated by the Court, while the parties dispute whether Defendant Officer Mason reached under Plaintiff's shirt to touch Plaintiff's bra, the Court found that there was not a genuine issue of fact regarding the matter and determined Defendant Officer Mason went under Plaintiff's shirt. However, the parties continue to dispute the exact nature of Defendant Officer Mason's contact with Plaintiff's bra (PSOF ¶40; Response

17

to PSOF ¶40). Also, the remainder of Defendant Officer Mason's search of Plaintiff remains in dispute and is not addressed, by agreement of the parties, in the current motions for summary judgment (*See* Doc. 34 at 2). These issues require credibility determinations that cannot be made at the summary judgment stage. *See e.g., Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions."). Therefore, the Court must deny Plaintiff's Motion for Partial Summary Judgment on the Section 1983 claim.

Similarly, the Court will also not grant Defendant Officer Mason's Cross-Motion for Summary Judgment on the Section 1983 claim as the Court cannot find Defendant Officer Mason to be entitled to qualified immunity in light of these genuine issues of fact. "The doctrine of qualified immunity protects government officials 'from liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "In analyzing a claim of qualified immunity, [a court] may examine the two key prongs . . . in either order." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (citing *Camreta v. Greene*, 131 S.Ct. 2020, 2031-32 (2011)).

Even if the Court finds that Defendant Officer Mason violated Plaintiff's constitutional right against an unreasonable search, Defendant Officer Mason may nonetheless be entitled to

qualified immunity if the constitutional right she allegedly violated was not clearly established. The Court must consider whether the law at the time of the events in question gave Defendant Officer Mason "fair warning" that her conduct was unconstitutional. *See Chambers v. Pennycook*, 641 F.3d 898, 908 (8th Cir. 2011) (citing *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)). Indeed, a person's right to be free from a strip search conducted in an unreasonable manner is clearly established. *See Wolfish*, 441 U.S. at 559-60. At the time of Plaintiff's strip search, the law clearly provided that strip searches should be: (1) conducted in an area as removed from public view as possible without compromising legitimate security concerns; (2) by officials of the same sex as the individual to be searched; (3) in a hygienic manner; and (4) not in "a degrading, humiliating or abusive fashion." *Richmond v. City of Brooklyn Ctr.,* 490 F.3d 1002, 1010 (8th Cir. 2007).

As previously discussed, genuine issues of material fact exist regarding the scope of the search's intrusion and the manner in which the search was conducted. Viewing the evidence in the light most favorable to Plaintiff, Defendant Officer Mason conducted a strip search in violation of Missouri Strip Search Law, did so with questionable probable cause, in an area that was not sufficiently private. Significantly, the parties contest the extent of the search, and, in the light most favorable to Plaintiff, the search continued beyond that which is addressed in the current motion to a vaginal and anal search. The Court will not grant qualified immunity to Defendant Officer Mason when addressing only a portion of the entirety of the contested search as "the scope of the particular intrusion" necessarily impacts the constitutionality of the search as well as whether the potentially unlawful conduct was clearly established at the time. *Wolfish,* 441 U.S. at 559 ("The test of reasonableness under the Fourth Amendment is not capable of

precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."). *See also United States v. Williams,* 477 F.3d 974, 977 (8th Cir. 2007) (finding a closer question as to the constitutional unreasonableness of a search where after a pat-down search revealed something inside defendant's pants, officers took defendant to the precinct's rear parking lot which is surrounded by the back of the precinct building, a brick wall, and a chain link fence topped with barbed wire, reached into defendant's underwear, and found a large amount of crack and powder cocaine); *Amaechi v. West,* 237 F.3d 356 (4th Cir. 2001) (finding a search unconstitutional when the invasiveness of plaintiff's search far outweighed any potential justification for the scope, manner, and place under which it was conducted). Accordingly, the Court denies the parties' motions for summary judgment on the Section 1983 claim, Count II.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff M.A.B.'s Motion for Partial Summary Judgment (Doc. 34) is **DENIED** and Defendant Michelle Mason's Cross-Motion for Summary Judgment (Doc. 43) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is set for a case status conference in chambers on **June 26, 2019, at 10:00 AM**.

Dated this 10th day of June, 2019.

/s/ Noelle C. Collins  
NOELLE C. COLLINS  
UNITED STATES MAGISTRATE JUDGE